J-A06014-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH D. JAY | : | |
| | : | |
| Appellant | : | No. 669 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 15, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0003206-2024

BEFORE: OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY OLSON, J.: **FILED: June 18, 2026**

Appellant, Joseph D. Jay, appeals from the judgment of sentence entered on April 15, 2025, following his bench trial conviction for neglect of animal – shelter/protection, 18 Pa.C.S.A. § 5532(a)(2). We affirm.

The trial court summarized the facts of this case as follows:

[On February 15, 2024,] Angela Fry, a Humane Society police officer from the Humane Animal Rescue League of Pittsburgh, [] responded to a call regarding a dog in a homeless encampment on the North Side of Pittsburgh. The report Fry had received indicated that the dog had been tethered [within] the encampment for up to a week without an owner being seen. When Fry arrived at the encampment she observed the unattended dog tethered behind a fence. The tether was 15 to 20 feet long; however, the dog had become entangled in debris which limited his range of movement. Prior to the dog's entanglement, he would have access to a 10[-]foot by 10-foot area that was covered with a tarp roof. Fry later clarified that the tarp was in fact a 10 by 10 canopy with no sides or enclosures. This area contained several wet blankets and sleeping bags. The temperatures in Pittsburgh during the relevant time are often below freezing. [T]estimony established that on February 15, 2024, the high was an

unseasonably warm 56 degrees. However, Fry was far more concerned with the low temperature, which could be 32 degrees on the same day, which would change the amount of time the dog could be safely tethered. Fry testified that the unenclosed canopy would have been too large to allow the dog to maintain his body heat.

Appellant testified that the condition in which Fry found the dog was not the condition in which he left the dog when he went to the hospital for hernia surgery on January 29, 2024. Appellant testified that he thought he would be gone only a week but due to complications he was gone multiple weeks. Appellant stated that he had fastened quilts to the canopy to enclose the area, but someone had removed them.

Trial Court Opinion, 7/16/2025, at 3-4 (record citations omitted; footnote incorporated).

On January 17, 2025, the trial court held a bench trial and found Appellant guilty of the aforementioned crime.[1] On April 15, 2025, the trial court sentenced Appellant to 45 to 90 days of incarceration and forfeiture of the animal at issue. Appellant filed a timely post-sentence motion on April 24, 2025, which the trial court denied by order entered the following day. This timely appeal resulted.[2]

On appeal, Appellant presents the following issue for our review:

---

[1] The Commonwealth also charged Appellant with three additional counts of neglect of animal pursuant to 18 Pa.C.S.A. § 5532(a)(1), (2), and (3). The trial court dismissed these additional charges.

[2] Appellant filed a notice of appeal on May 21, 2025. On May 22, 2025, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on June 4, 2025. On July 16, 2025, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Was the evidence presented at trial insufficient as a matter of law to sustain [Appellant's] conviction for neglect of animal – shelter/protection where the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] failed to provide for the basic needs of his dog?

Appellant's Brief at 3.

In sum, Appellant argues that the evidence produced at trial was insufficient to convict him of neglect of animal pursuant to Section 5532(a)(2), because:

This statute does not specify what proper shelter should look like or be made of, and the rule of lenity requires that this ambiguity be interpreted in the light most favorable to the accused. Evidence at trial showed that the dog in question was housed in a large enclosure with a tarp roof over it. [Appellant] testified that when he left his dog in the care of others, the dog was in a shelter of blankets and tarps fashioned to create a doghouse in which the dog could remain safe and warm. Although [Appellant] was homeless and spent time in the hospital before his dog was confiscated, he recruited others to help care for the dog and did all he could to ensure that [the animal's] basic needs were met.

*Id.* at 9 (case citation omitted).

We employ the following standard of review, to determine

whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. A sufficiency claim fails if the evidence, including circumstantial evidence, is sufficient for the trier of fact to find every element of the crime. However, mere suspicion or speculation is not sufficient to sustain a conviction.

*Commonwealth v. Sears*, 2024 PA Super 108, 317 A.3d 633, 636 (2024).

"A person commits [the] offense [of neglect of animal] if the person fails to provide for the basic needs of each animal to which the person has a duty of care, whether belonging to himself or otherwise, including … [a]ccess to

clean and sanitary shelter and protection from the weather. The shelter must be sufficient to permit the animal to retain body heat and keep the animal dry." 18 Pa.C.S.A. § 5532(a)(2). "[A] violation of this section is a summary offense" unless "the violation causes bodily injury to the animal or places the animal at imminent risk of serious bodily injury," in which case, "the violation is a misdemeanor of the third[-]degree." 18 Pa.C.S.A. § 5532(b)(1)-(2). "This Court has held that Section 5532 requires a mental state of recklessness when charged as a misdemeanor but requires no proof of culpability as a summary offense." **Sears**, 317 A.3d 633, 637 (Pa. Super. 2024). Here, Appellant was convicted of a summary offense, as there was no evidence presented of risk of serious bodily injury to the dog. As such, the Commonwealth was not required to produce evidence of culpability.

Before examining the merits of Appellant's claim, we note that he waived portions of the argument he develops in his brief to this Court. More specifically, our review of the certified record confirms that Appellant failed to preserve his claim that the animal had been placed into the care of others, as well as the claim that Fry was unqualified to testify as an expert. In both his post-sentence motion and Rule 1925(b) concise statement, Appellant challenged only the sufficiency of the evidence pertaining to the adequacy of the shelter at issue. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Thus, Appellant cannot, for the first time on appeal, argue that the animal was in the care of others. **See** Pa.R.A.P. 302(a).

Similarly, since Appellant did not challenge Fry's status as an expert witness in his Rule 1925(b) statement, this portion of Appellant's claim is waived, as well. **See** Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 302(a). Accordingly, we constrain our analysis to whether Section 5532(a)(2) is ambiguous and whether the Commonwealth presented sufficient evidence of every element of the crime.[3]

_____

[3] Even if Appellant did not waive these claims, we would find that they lacked merit. Appellant suggests that because "Fry was not qualified as an expert, [] her lay opinion testimony was not dispositive as to the adequacy of the dog's shelter." Appellant's Brief at 11. When a witness's testimony is based upon "scientific, technical, or other specialized knowledge [] beyond that possessed by the average layperson," the witness must be qualified as an expert "by knowledge, skill, experience, training or education." Pa.R.E. 702(a). However, Pa.R.E. 701 permits a lay witness to offer opinion testimony if the opinion is rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge. **See** Pa.R.E. 701. We have previously determined that "lay opinion testimony embracing an ultimate issue in a case is admissible as long as the witness perceived the events upon which his opinion is based." **Commonwealth v. Bowser**, 624 A.2d 125, 133 (Pa. Super. 1993)(citation omitted). Here, the trial court permitted Fry to testify about her personal observations. "A determination that a trial court abused its discretion in making an evidentiary ruling may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Commonwealth v. Saez**, 225 A.3d 169, 178 (Pa. Super. 2019) (citation omitted). Upon review, we discern no abuse of discretion in permitting Fry to testify as a lay witness. Finally, upon cursory review, we have not uncovered any legal research providing that expert testimony is required to sufficiently prove the summary offense of neglect of animals and Appellant does not suggest otherwise.

Appellant's contention that the placement of the animal into the temporary care of others absolves him of criminal liability is also devoid of merit. The
*(Footnote Continued Next Page)*

On appeal, Appellant argues that "the uncontroverted evidence at trial showed that the dog was housed in a large enclosure with a tarp roof over it and blankets inside." Appellant's Brief at 11 (record citations omitted). Appellant argues that "the specifics of what the shelter should look like or be made of are not defined" and, therefore, Section 5532(a)(2) is ambiguous and should be interpreted in the light most favorable to himself. *Id.* at 10. Appellant claims that the photographs of the area "taken on February 15, 2025, did not depict the state in which he left the doghouse and the doghouse must have been torn apart." *Id.* at 12. Appellant maintains that he gave his dog "the best shelter he possibly could under the circumstances, he himself being homeless." *Id.* at 13.

When interpreting statutes, our Supreme Court has stated:

In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq*., which

---

plain language of Section 5532 provides that, "[a] person commits an offense if the person fails to provide for the basic needs of each animal to which the person has a duty of care, whether belonging to himself or otherwise, including [necessary sustenance and potable water, access to a clean and sanitary shelter sufficient to permit the animal to retain body heat and keep dry, and necessary veterinary care]." 18 Pa.C.S.A. 5532(a). As such, the statute extends criminal liability for neglect to all who owe a duty of care to an animal, including both current owners and **others** who may assume a temporary duty of care for an animal. Placing an animal into the temporary care of another does not absolve the owner from potential criminal liability under Section 5532. *See, Sears*, 317 A.3d at 637 (holding temporary caretaker criminally liable under Section 5532 for failure to provide for basic needs of five dogs placed into his care by a friend). As such, even if another individual assumed a temporary duty of care for the animal, Appellant could still be held criminally liable for neglect because he continued to owe a duty of care as the undisputed owner of the dog.

provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). A statute's plain language generally provides the best indication of legislative intent. ***See***, ***e.g.***, ***McGrory v. Dep't of Transp.***, 915 A.2d 1155, 1158 (Pa. 2007); ***Commonwealth v. Gilmour Mfg. Co.***, 822 A.2d 676, 679 (Pa. 2003); ***Pa. Fin. Responsibility Assigned Claims Plan v. English***, 664 A.2d 84, 87 (Pa. 1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). Only where the words of a statute are not explicit will we resort to other considerations to discern legislative intent. 1 Pa.C.S.A. § 1921(c***); see also In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election***, 843 A.2d 1223, 1230 (Pa. 2004) (*citing* ***O'Rourke v. Commonwealth***, 778 A.2d 1194, 1201 (Pa. 2001)); ***Ramich v. Workers' Comp. Appeal Bd. (Schatz Elec., Inc.)***, 770 A.2d 318, 322 (Pa. 2001).

***Commonwealth v. McCoy***, 962 A.2d 1160, 1166 (Pa. 2009).

Here, the plain language of Section 5532 provides that the animal must have "[a]ccess to clean and sanitary shelter and protection from the weather [] sufficient to permit the animal to retain body heat and keep the animal dry." 18 Pa.C.S.A. § 5532(a)(2). The statute is not ambiguous merely because it does not specify the nature or type of structure or the type of materials to be used. The plain language provides only that animals must be sheltered in a sanitary way that allows the animal to stay warm, clean, dry, and protected from the elements. The words are clear and free of all ambiguity.

Ultimately, as detailed above, the trial court determined that "[t]he evidence established that Appellant violated 18 Pa.C.S.A. § 5532(a)(2)." Trial Court Opinion, 7/16/2025, at 4. More specifically, the trial court noted that the canopy Appellant installed "did not adequately protect the dog from the weather, and the size of the structure and the lack of walls did not permit the

dog to retain body heat and keep him dry … given the time of year." *Id.* The trial court recognized it was winter, temperatures were often below freezing, the dog only had access to wet blankets and sleeping bags, and that no one had been seen caring for the dog for over a week. *Id.* As such, the trial court concluded that "[d]espite Appellant's attempts, he failed to provide adequate shelter for the dog[.]" *Id.*

Upon review of the certified record, applicable law and viewing the evidence in the light most favorable to the Commonwealth as required, we agree with the trial court's assessment. In this case, the Commonwealth presented more than ample evidence, as detailed at length above, proving Appellant's makeshift shelter did not permit the animal to retain body heat, stay dry, and/or be protected from the weather. Accordingly, the Commonwealth sustained its burden of producing sufficient evidence to support Appellant's conviction under Section 5532(a)(2) and Appellant's sole appellate issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

6/18/2026